**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| THE WESTERN UNION COMPANY, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| WESTERN UNION, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action |
| v. | ) | File No.: 1:17-cv-0028 |
| | ) | |
| TOM KULA, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT TOM KULA'S MOTION**
**FOR PARTIAL SUMMARY JUDGMENT**

In July 2016, Defendant Tom Kula ("Kula") resigned his employment with Plaintiffs (collectively "Western Union") as a salesperson after nearly 24 years and joined Paymentus Group, Inc. in a different, non-sales role ("Paymentus"). Six months later, Western Union initiated this action against Kula alleging that he breached certain purported contractual and common law obligations when he left Western Union and joined Paymentus. With discovery now complete, it is clear that certain of Western Union's claims lack any basis in law or fact and thus must be dismissed.

First, Western Union's breach of contract claims must be dismissed because they are based upon a 2015 Restrictive Covenant Agreement ("2015 RCA") that was never executed or accepted by Kula. Alternatively, even if the 2015 RCA had been executed or accepted by Kula that agreement was subsequently canceled, superseded, and replaced by the 2016 Variable Compensation Plan entered into between the parties (the "2016 Compensation Agreement"). The 2016 Compensation Agreement is different in many material respects from the 2015 RCA, including the lack of a non-compete provision, and thus that agreement cannot support Plaintiffs' claims in this action. Accordingly, Kula is entitled to summary judgment on the breach of contract claims in Counts III and IV of the Complaint.

Second, Kula is entitled to summary judgment with respect to Count V of the Complaint, alleging a claim for tortious interference with contractual relations. The Complaint fails to identify any third party (presumably a customer) that has in fact breached its contractual agreement with Western Union as a result of Kula's purported improper interference, nor does any of the evidence produced during discovery support such a claim. Because a breach of a contract with a third party is an essential element to the tortious interference with contractual relations claim, Count V of the Complaint must also be dismissed.

1

## SUMMARY OF KEY FACTS[1]

Employment History:  Kula worked as an employee for Western Union, most recently in a sales role position entitled Vertical Vice President, Payment Sales, from approximately January 1993 until he tendered his resignation on July 11, 2016 and ultimately left his employment on July 22, 2016.  (Undisputed Facts ¶¶8-9, 15-16).  Kula submitted his resignation following receipt of a May 9, 2016 warning letter from Western Union threatening to terminate his employment.  (Undisputed Facts ¶¶ 10-15).  Upon his resignation, Kula joined Paymentus in a non-sales role.  (Undisputed Facts ¶ 18).  Kula informed both his current supervisor and his former supervisor of his new position at Paymentus.  (Undisputed Facts ¶ 15).

Employment Contract History:  Over the years of Kula's employment at Western Union, he entered into multiple different agreements regarding his compensation.  (Undisputed Facts ¶ 19).  In this action, Western Union's breach of contract claims are based upon the 2015 RCA purportedly executed by Kula on May 13, 2016.  (Undisputed Facts ¶¶ 20-40).  However, Kula denies having ever executed the 2015 RCA, as (i) he did not accept the 2015 RCA; (ii) he did not physically sign the 2015 RCA; (iii) he did not electronically accept the 2015 RCA; and (iv) Kula has never received any vested stock in connection with his alleged execution of the 2015 RCA. (Undisputed Facts ¶¶ 25-27).  Furthermore, Western Union has failed to provide any evidence that Kula was offered or accepted the 2015 RCA.  (Undisputed Facts ¶¶ 29-40).

Both Kula and Western Union agree, however, that Kula accepted the 2016 Variable Compensation Agreement.  (Undisputed Facts ¶¶ 47-49).  ███████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[1] The full listing of relevant undisputed facts is enclosed in Defendant's Rule 56.1 Statement of Material Facts filed concurrently herewith.

█████████████████████. (Undisputed Facts ¶ 46). ████████████

████████████████████████████████████████████████

████████████████████████. (Undisputed Facts ¶ 44).

No Interference with Contractual Relations: In Count V of the Complaint, Western Union alleges that Kula has been improperly trying to get Western Union customers to transfer their accounts to Kula's new employer, Paymentus. (*See* Dkt. 1, Compl. ¶¶ 16, 64-69). However, Western Union's Complaint does not allege that any customer has breached its contractual agreement with Western Union, let alone committed the breach due to any of Kula's alleged improper activities. (Undisputed Facts ¶¶ 50-51). Moreover, the undisputed facts show that (i) Kula did not solicit any Western Union customers to breach their contractual agreements with Western Union (Undisputed Facts ¶¶ 52-57); and (ii) Western Union admits it is not aware of any customer that has breached its contract with Western Union (Undisputed Facts ¶¶ 52-57).

## LEGAL STANDARD

A party may move for summary judgment or partial summary judgment at any time by "identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id*. "The initial burden is on the moving party ... to demonstrate that there is no material question of fact with respect to an essential element of the non-moving party's case." *Delta Consulting Grp., Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1137 (7th Cir. 2009) (internal quotations omitted). Once the movant satisfies this initial burden, the burden then shifts to the non-moving party who "may not rest upon the mere allegations or denials of his pleading, but … must set forth specific facts showing that there is a genuine issue for trial." *Doe v. Cunningham*, 30 F.3d 879, 883 (7th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

3

(1986)). Where the non-moving party bears the burden of proof with respect to the claims at issue – as Western Union does here – the non-movant "must present evidence sufficient to establish a triable issue of fact on all essential elements of its case." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 702 (7th Cir. 2009). In such circumstances, no issue shall remain for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50.

## ARGUMENT

I.    **Counts III & IV of the Complaint Must Be Dismissed Because The Claims Are Based Upon An Inoperative Contract That Was Never Executed And That Has Been Superseded.**

Western Union's Complaint contains two separate breach of contract claims (Counts III & IV), both of which are incorrectly based upon an inoperative and superseded version of Kula's compensation plan agreement containing post-employment restrictive covenants. (*See* Dkt. 1, Compl. ¶¶ 16, 51-63; Dkt. 6, Ex. 1). The Complaint alleges that the 2015 RCA is the "most recent agreement" between the parties containing Kula's post-employment restrictive covenants. (*See* Dkt. 1 at ¶¶ 16, 53-54, 60). However, the undisputed facts establish that Kula never executed this agreement, and that the most recent and operative agreement containing Kula's post-employment restrictive covenants is in fact the 2016 Compensation Agreement. (Undisputed Facts ¶¶ 20-49).

### a. The 2015 RCA Agreement Was Never Accepted by Kula.

Contract formation requires mutual assent. *Sgouros v. Transunion Corporation*, 817 F.3d 1029 (7th Cir. 2016). In Illinois, such acceptance is determined by an objective approach that looks for outward expressions such as words and acts. *Id.* In this case, there was no mutual assent to the 2015 RCA. Kula never accepted the 2015 RCA, and there is no evidence of any

4

outward expression of acceptance of the 2015 RCA through any execution by Kula, either physically or electronically. (Undisputed Facts ¶¶ 25-41)  As a result, Western Union's claims that are improperly premised upon the 2015 RCA must be dismissed.

Western Union concedes, as it must, that (1) it did not obtain any physical signature from Kula, and (2) it does not possess any version of the 2015 RCA completed by Kula, including applicable text on the blank lines on the first page (for an employee's name) and the blank lines on the last page (for the employee's signature, date, and employee ID #).  (Undisputed Facts ¶ 26).  Instead, Western Union relies upon an alleged electronic acceptance by Kula on May 13, 2016.  However, there is no evidence that Kula electronically accepted the 2015 RCA on this date, or any other date.

Western Union argues that Kula accepted the 2015 RCA based on its records that Kula accepted a stock award on May 13, 2016 (that Western Union subsequently canceled). (Undisputed Facts ¶¶ 28, 35).  ███████████████████████████████████

███████████████████████████████████

██████ (Undisputed Facts ¶ 28)  Western Union, in response to a Court order, further submitted the declaration of Tracey McKee regarding the stock award.  The McKee declaration is not only internally contradictory[2], it also fails to provide any evidence of Kula's actual acceptance of the 2015 RCA.  Indeed, the McKee declaration expressly confirms that Kula did not "click" accept on the 2015 RCA.  (Undisputed Facts ¶¶ 34-38)  Instead, McKee states that Kula would have been shown a screen shot, selected the stock award he wanted to accept, could review grant documents, and if he wanted to accept the award, he would enter in his password and click the

---

[2] For instance, the McKee declaration states "The most recent RCA executed by Kula on February 8, 2016, pursuant to WU's electronic signature policy, is attached as Exhibit 1."  (Undisputed Facts ¶ 37).  Not only is this a different date than Western Union's database entries, it is also later contradicted by McKee when she states that he purportedly accepted the 2015 RCA on May 13, 2016 when he accepted a stock grant. (Undisputed Facts ¶ 37).

"submit button." (Undisputed Facts ¶ 38).

While McKee states that Exhibit 2 to her declaration is the screen shot Kula would have supposedly seen when accepting the stocks, even a cursory review of Exhibit 2 reveals that this cannot be the case. (Undisputed Facts ¶ 35). Exhibit 2 does not contain any spot for any employee to insert his password or to click the "submit button." (Undisputed Facts ¶ 35). Moreover, at the top left of the page, it identifies the screen shot as the Administrative Site for someone named Beverly, who is looking at details for Kula's stock award. (Undisputed Facts ¶ 35). There is no evidence that the screen shot shown to Kula resembles this clearly internal administrative screen shot in any way. Regardless, even on this screen shot, the hyperlink that purportedly reaches the 2015 RCA does not even mention the 2015 RCA by name or give any indication that it is a restrictive covenant. (Undisputed Facts ¶ 36). It is instead misleadingly listed only as "Illinois LLC" without any indication that the "Illinois LLC" is in fact a restrictive covenant that purportedly must be accepted in order to accept the stock award, let alone providing any means for actually accepting the 2015 RCA. (Undisputed Facts ¶ 36).

Western Union's corporate representative testified ██████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████ (Undisputed Facts ¶ 29). Despite admitting that Western Union has all of Kula's emails from this time period, Western Union has failed to produce any such emails containing instructions that his stock award was governed by the 2015 RCA. (Undisputed Facts ¶¶ 30-31). Western Union would have obviously produced such emails if they existed. Thus, the only conclusion that can be reached based on the record is that Kula was never offered the 2015 RCA.

Significantly, Western Union's corporate representative also testified ███████████

██████████████████████████████████████████████████████████████████

████████████████████████████████████ (Undisputed Facts ¶ 32).  The

corporate representative also testified ████████████████████████████████████

(Undisputed Facts ¶ 32).  The fact that Western Union has been unable to provide *any* screen

shots of what Kula actually saw when purportedly accepting the 2015 RCA or any subsequent

stock award is telling. Western Union would have obviously produced such screen shots if they

existed for Kula.  This is especially true given the fact that Kula has filed ***two motions to compel***

seeking numerous documents, including such screen shots, and Western Union was expressly

ordered by the Court to either produce all responsive documents pertaining to Kula's agreements

pertaining to his employment with Western Union or submit an affidavit detailing its efforts to

locate them.  (Dkt. #61).  Indeed, Western Union's declaration certifies that it has looked for all

such screenshots and produced them, to the extent such documents could be located.  (McKee

Declaration at 11).  However, no such screen shots were produced. Thus, Western Union has

failed to provide *any* evidence that such screen shots of the 2015 RCA appeared when Kula

accepted his stock award in May, 2016 or that he assented to the terms of the 2015 RCA.

Finally, even if Kula were shown the screenshot attached as Exhibit 2 to the McKee

declaration that still would not constitute acceptance under applicable law.  While electronic

signatures of contracts are potentially valid forms of acceptance, "the layout and language" of

the page where the user "clicks" agreement must provide the user with reasonable notice that a

"click" will manifest acceptance of a specific agreement.  *Sgouros v. Transunion Corporation*,

817 F.3d 1029 (7th Cir. 2016).  As the Seventh Circuit has recently made clear in *Sgouros*, such

sufficient notice would include a statement that "All sales are subject to Terms and Conditions"

followed by a hyperlink labeled "Terms and Conditions." *Id.* at 1035 (citing *Hubbert v. Dell. Corp.*, 349 Ill. App. 3d 976 (2005)). In contrast, the Seventh Circuit held that where the webpage does not contain a "clear statement his purchase was subject to *any* terms and conditions of sale" and the hyperlink was simply labeled "Printable Version" then the site falls short of providing reasonable notice that clicking the agreement would subject the person to the service agreement linked to with the "Printable Version" hyperlink. *Id*. (Emphasis in original.)

Even if one were to assume that Exhibit 2 to the McKee declaration is even a close facsimile to what Kula would have seen, the Seventh Circuit's holding in *Sgouros* should control because the 2015 RCA is mislabeled or deceptively labeled on that screenshot simply as "Illinois LLC". There is no mention of the 2015 RCA at all. ***Significantly, there is no statement anywhere on the page that the stock awards are purportedly governed by and expressly require acceptance of the 2015 RCA.*** Lastly, McKee states that the clicking of "submit" by Kula was to submit his acceptance of the stock award. But without any clear language anywhere on the site, no objective user would understand clicking "submit" would also bind Kula to the onerous terms of the 2015 RCA. Accordingly, Western Union's reliance on the 2015 RCA should be rejected.

### b. The 2016 Variable Compensation Agreement is the Operative Agreement, Superseding All Prior Agreements.

Even assuming, *arguendo*, that the 2015 RCA agreement had been executed by Kula, the 2016 Compensation Agreement ***expressly superseded and replaced*** all prior agreements between the parties regarding Kula's compensation and post-employment restrictions, including the 2015 RCA attached to Western Union's Complaint. As a result, Western Union's claims that are improperly premised upon the 2015 RCA must be dismissed.

Kula entered into multiple agreements during his employment with Western Union containing various forms of restrictive covenants. (Undisputed Facts ¶ 19). For purposes of this

8

motion, the relevant agreements he allegedly entered into are the 2015 RCA, the 2015 LTIP[3],

and the 2016 Compensation Agreement[4].

Western Union relies on the 2015 RCA language in asserting that Kula is subject to and

purportedly in violation of a non-competition provision contained in such agreement. However,

Western Union simply ignores the express terms of the 2016 Compensation Agreement it drafted

and entered into with Kula which makes clear that the 2016 agreement is the ***only*** operative

document governing Kula's post-employment obligations (which agreement notably does not

contain any non-competition provision).  Specifically, the 2016 Compensation Agreement



(Undisputed Facts ¶ 46) (emphasis added).

.[5]  Under applicable law,[6] the existence of

---

[3] The 2015 Long Term Incentive Plan ("2015 LTIP") is referenced in the 2015 RCA as the consideration for the 2015 RCA.   (Undisputed Facts ¶ 23).  After repeatedly failing to produce a copy of the 2015 LTIP despite two motions to compel, only after this Court expressed surprise that such a document could not be located and therefore ordered Western Union to produce a declaration from a corporate officer that no such 2015 LTIP exists, Western Union was, in fact, ultimately able to locate a copy of the 2015 LTIP after all.

[4] The 2016 Compensation Agreement also references and incorporates an "Individual Compensation Plan."  Despite two motions to compel and Court ordered declaration from a corporate officer that no such document exists, Western Union has failed to produce the document.  (Undisputed Facts ¶ 43).  Moreover, the McKee declaration submitted by Western Union fails to detail any attempts by Western Union to locate the agreement.

[5]  Notably, it cannot be disputed that the 2015 RCA is encompassed by this provision applicable to "previous compensation plans or arrangements", as the 2015 RCA expressly incorporates by reference the terms of Western Union's 2015 Long-Term Incentive Plan. *See* Dkt. 6, Ex. 1 at 1 ("In consideration of employment or continued employment by the Company, the grant to Employee of an award pursuant to The Western Union Company 2015 Long-Term Incentive Plan (incorporated herein by this reference) ("LTIP Award"), and other good and valuable consideration, Employee agrees as follows: ….").

this integration clause precludes Western Union from attempting to rely upon or introduce any evidence regarding a prior agreement between the parties on the same subject matter.  *See Brooklyn Bagel Boys, Inc. v. Earthgrains Refrigerated Dough Prod., Inc.*, 212 F.3d 373, 380 (7th Cir. 2000) (holding that contract containing an integration clause stating that it "constitutes the entire agreement of the parties," and "supersedes all prior and contemporaneous agreements" forbids the introduction of any "prior or contemporaneous agreement or terms not included in the Contract").[7]  This result also avoids the clearly inappropriate position that both contracts could somehow be fully enforceable, as the agreements have multiple material and conflicting terms, especially with respect to the restrictive covenant provisions.  (Undisputed Facts ¶ 44).

In applying this principle in similar circumstances involving the existence of multiple employment and/or compensation agreements, courts have consistently held that where an employer and employee enter into an agreement containing such an integration clause (or the employer otherwise represents that the new agreement supersedes any prior version), that subsequent agreement shall govern the parties' relationship by superseding and replacing any prior agreements on the same subject matter.  *See, e.g.*, *Act II Jewelry, LLC v. Wooten*, No. 15 C 6950, 2016 WL 3671451, at *3-4 (N.D. Ill. July 11, 2016) (holding that restrictive covenants in

---

[6]  The choice of law provisions in the agreements are inconsistent, as the 2016 Compensation Agreement provides

████████████████████████████████████████████████████████

████████████████████████████████████████████ " (Undisputed Facts ¶ 45), and the 2015 RCA contains a Delaware choice of law provision (Undisputed Facts ¶ 22).  Kula resides in Illinois and at all times was a Western Union employee residing in Illinois. (Undisputed Facts ¶ 17).  Illinois law prevails, as the only connection the parties have to Delaware is Western Union's state of incorporation (Undisputed Facts and ¶ 1) and Illinois views restrictive covenants as repugnant.  *Grand Vehicle Works Holdings Corp. v. Frey*, 03-cv-7948, 2005 WL 1139312 *6 (N.D. Ill. May 11, 2005) *citing Curtis 1000, Inc. v. Suess*, 24 F.3d 941, 948-49 (7th Cir. 1994).  This inconsistency is irrelevant, however, as the analysis and conclusions set forth herein are the same under both Illinois and Delaware law.

[7]  *See also TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 636 (7th Cir. 2007) ("[I]n a situation where the contract is facially unambiguous and contains an integration clause, the 'four corners rule' applies, barring the consideration of extrinsic evidence."); *Progressive Int'l Corp. v. E.I. Du Pont de Nemours & Co.*, No. C.A. 19209, 2002 WL 1558382, *7 (Del. Ch. July 9, 2002) ("the existence of an integration clause between sophisticated parties is conclusive evidence that the parties intended the written contract to be their complete agreement") (internal citations omitted).

employee's incentive compensation agreement superseded and rendered unenforceable the restrictive covenants in prior confidentiality agreement where the incentive agreement "explicitly states that it 'supersedes in entirety any prior written or oral agreements between the Parties");[8] *Oce N. Am., Inc. v. Brazeau*, No. 09 C 2381, 2009 WL 6056775, at \*7-8, (N.D. Ill. Sept. 4, 2009), *report and recommendation adopted*, No. 09C2381, 2010 WL 5033310 (N.D. Ill. Mar. 18, 2010) (holding that 2007 employment agreement superseded 2005 employment agreement where employer expressly agreed that "[t]his agreement is an up[dated] version of confidentiality and/or restrictive covenant agreements you may have signed in the past, and supersedes any such prior agreements"); *Vituli v. Carrols Corp.*, No. CIV.A. 12C-08224 FSS, 2013 WL 2423091, at \*1-2 (Del. Super. Ct. Mar. 28, 2013) (holding that 2008 employment agreement that was silent with respect to arbitration procedures superseded prior 2005 agreement to mandatory, company-wide arbitration program given the existence of an integration clause in the 2008 agreement); *In re Worldwide Direct, Inc*., 268 B.R. 69, 72 (Bkrtcy. D. Del. 2001) (holding severance agreement to be a substituted contract superseding obligations in prior contract based upon finding that "[T]he Severance Agreement did clearly and unequivocally state that it was in substitution for any prior rights that the parties had.  Specifically, the Agreement states: 'This Agreement sets forth the entire agreement between the parties hereto and fully supersedes any and all prior agreements or understandings between the parties hereto pertaining to the subject matter hereof'. … This language clearly evinces the intent to create a substituted contract.").[9]

---

[8]  The court in *Act II* thereafter held that the incentive agreement acknowledged and reaffirmed the restrictive covenants contained in the confidentiality agreement by express reference. *See id*.  However, no such acknowledgement or reaffirmation exists in the 2016 Compensation Agreement at issue in this action.

[9]  *See also*, *e.g.*, *GCIU Employer Ret. Fund v. Chicago Tribune Co.*, 66 F.3d 862, 865-67 (7th Cir. 1995) ("[B]y operation of the above integration clause, the Tribune's obligations under the 1979 Subscription Agreement were superseded by the 1980 CBA.") (quoting *Decca Records, Inc. v. Republic Recording Co.*, 235 F.2d 360, 363 (6th Cir.1956) ("A second contract of a later date than an earlier contract containing the same subject matter, but containing terms inconsistent with the former contract, will supersede the former contract even though there is no express agreement that the new contract shall have that effect.")).

Consistent with the holdings in these cases, ███████████████████████

████████████████████████████████████████████████

███████████████████████████████████ and thus it cannot now

attempt to rely upon the earlier superseded document for purposes of this lawsuit.

Western Union may attempt to save its non-competition claims by asserting that the

integration clause in the 2016 Compensation Agreement does not operate to supersede the 2015

RCA because Kula allegedly accepted that 2015 RCA by electronic agreement on May 13, 2016.

This argument in untenable for three reasons. First, it ignores the clear and unambiguous

language of the 2016 Compensation Agreement that Western Union itself drafted. Second, as

the 2016 Compensation Agreement canceled all prior compensation arrangements, including the

2015 LTIP, any execution of the 2015 RCA in 2016 would lack any valid consideration. Third,

while Kula has not received any vested stock pursuant to his alleged 2016 execution of the 2015

RCA, it is undisputed that he has received and accepted numerous payments pursuant to his 2016

Compensation Agreement, until he left Western Union in July, 2016. (Undisputed Facts ¶¶ 28,

48).

Moreover, even if Western Union were to claim that ambiguities exist with respect to the

competing versions of the restrictive covenant agreements, any such ambiguities must be

resolved against the company under two separate canons of construction. First, as the Seventh

Circuit has recognized, courts "abhor" restraints on trade, and thus, "restrictive covenants are

carefully scrutinized." *Liautaud v. Liautaud,* 221 F.3d 981, 986 (7th Cir. 2000) (applying Illinois

law) (internal citations omitted).[10] As a result, in construing and interpreting such restrictive

---

[10] *See Triumph Packaging Grp. v. Ward,* 834 F. Supp. 2d 796, 814 (N.D. Ill. 2011) ("In Illinois, restrictive covenants are disfavored and are therefore "carefully scrutinized.") (citing *Liautaud*); *Cambridge Eng'g, Inc. v. Mercury Partners 90 BI, Inc.,* 378 Ill. App. 3d 437, 447 (1st Dist. 2007) (same).

covenants, courts have established that "any doubts or ambiguities must be resolved against the restriction." *Instant Tech., LLC v. DeFazio*, 12cv491, 2012 WL 2567033 *6 (N.D. Ill. June 26, 2012); *Marwaha v. Woodridge Clinic, S.C.*, 339 Ill. App. 3d 291, 293 (2d Dist. 2003). Second, any ambiguities that purportedly exist in the 2015 or 2016 agreements must be resolved against Western Union as the drafter of these form employment compensation agreements.[11]

Accordingly, for the reasons set forth herein, the breach of contract claims set forth in Counts III & IV of Western Union's Complaint must be dismissed.

## II. Count V's Claim for Tortious Interference with Contractual Relations Must Be Dismissed Because There Has Been No Claim That Any Western Union Customer Breached Its Contract With Western Union.

Count V of the Complaint alleges a cause of action for tortious interference with contractual relations. As Western Union has not alleged and cannot prove that any its customers have breached its contractual agreements with Western Union, let alone breached a contract due to any alleged improper conduct of Kula, this claim must be dismissed.

In order to support a claim for tortious interference with contractual relations, Western Union must show:

(1) The existence of a valid and enforceable contract between Western Union and a third party;
(2) Kula's awareness of that contract;
(3) Kula's intentional and unjustified inducement of a breach of that contract;
(4) A subsequent breach by the third party, caused by Kula's wrongful conduct; and
(5) Damages.

*See Cavalieri-Conway v. L. Butterman & Associates*, 992 F. Supp. 995, 1011 (N.D. Ill. 1998); *Williams v. Shell Oil*, 18 F.3d 396, 402 (7th Cir. 1994); *Borowski v. DePuy, Inc.*, 850 F.2d 297, 302 (7th Cir. 1988) (tortious interference claim dismissed and sanctions granted for "failure to

---

[11] *See Dowd & Dowd, Ltd. v. Gleason*, 181 Ill.2d 460, 479 (Ill. 1998) ("[A]ny ambiguity in the terms of a contract must be resolved against the drafter of the disputed provision."); *Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1036 (7th Cir. 1998) (same); *Norton v. K-Sea Transp. Partners L.P.*, 67 A.3d 354, 360 (Del. 2013) ("If the contractual language at issue is ambiguous and if the [party] did not negotiate for the agreement's terms, we apply the *contra proferentem* principle and construe the ambiguous terms against the drafter.") (internal citation omitted).

provide a factual predicate to support his tortious interference claim"); *Matter v. Williams*, 832 F.

Supp. 244, 247 (C.D. Ill. 1993), (tortious interference claim dismissed and sanctions granted

where the only contract allegedly breached was between the plaintiff and defendant).

Count V of Western Union's Complaint (Dkt. 1) purports to allege a claim for tortious

interference with contractual relations by alleging:

(1) Western Union has valid and enforceable contracts with its customers (Dkt. 1 ¶ 65);
(2) Kula is knowledgeable about Western Union's agreements with its customers (Dkt. 1 ¶ 66);
(3) Kula intentionally interfered with these contracts through improper means, including by soliciting customers to cease business with Western Union and move their business to Paymentus (Dkt. 1 ¶¶ 67-68);
(4) Due to this conduct, Western Union has been injured (Dkt. 1 ¶ 69).

Western Union's Complaint noticeably fails to identify any Western Union customers that have

in fact breached their contractual agreements with the company, let alone due to the allegedly

improper interference by Kula.  (Undisputed Facts ¶¶ 50-56).  The record is similarly devoid of

any evidence supporting such an allegation.  Instead, the undisputed facts show that (i) Kula did

not solicit any Western Union customers to breach their contractual agreements with Western

Union (Undisputed Facts ¶ 57); and (ii) Western Union is not aware of any customer that has

breached its contract with Western Union (Undisputed Facts ¶¶ 54-56).[12]

As there has been no breach of contract with a customer, there can be no claim for

tortious interference with contractual relations.  *See Ecton v. Van Houten NA, Inc.*, 94-cv-6825,

1996 WL 296587, *4 (N.D. Ill. May 31, 1996) ("There was no breach of contract. The key

elements of a tortious interference claim is a breach of a valid and enforceable contract caused by

intentional and unjustified inducement. Since there was no breach as explained earlier, there can

---

[12] While Western Union's corporate representative has testified ███████████████ ██████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████. (Undisputed Facts ¶ 56).

be no tort recovery."); *Cavalieri-Conway*, 992 F. Supp. at 1011 ("[T]he court concludes that Cavalieri-Conway's claim must fail because there was no breach of contract here."); *Cook v. Winfrey*, 975 F. Supp. 1045, 1053 (N.D. Ill. 1997) ("It is well established that no cause of action exists for intentional interference with a contract under Illinois law if the plaintiff has failed to establish that there was an actual breach of contract.").

Accordingly, for the reasons set forth herein, the tortious interference with contractual relations claim set forth in Count V of the Complaint must be dismissed.

## CONCLUSION

Wherefore, Defendant Tom Kula requests that the Court enter an order granting partial summary judgment in his favor by dismissing Counts III, IV & V of the Complaint.

June 5, 2017

**TOM KULA**

By: /s/ Jason J. Keener_____
                   One of His Attorneys

Martin B. Carroll (ARDC # 6200977)
Jason J. Keener (ARDC # 6280337)
Erik J. Ives (ARDC # 6289811)
**Fox, Swibel, Levin & Carroll, LLP**
200 West Madison Street
Suite 3000
Chicago, IL 60606
312.224.1200
mcarroll@foxswibel.com
jkeener@foxswibel.com
eives@foxswibel.com

15

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 5, 2017, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

/s/ Jason J. Keener
Jason J. Keener